Middle District of Alabama

RECEIVED

2005 DEC 22 P 2:54

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Dr. Herman Paul Johnson
    Inmate 242189
      Plaintiff

V.

Donal Campbell, Commissioner of the
Alabama Department of Corrections; Warden
Mosely; Dr. Darbouze; Et. Al.
           Defendants

Complaint:
2:05cv1157-T

## Plaintiff's Second Amended Complaint

Plaintiff Dr. Herman Paul Johnson, Pro Se, for his Second Complaint against defendants Donal Campbell, Warden Mosely; Dr. Darbouze; John, Jane Doe, Alleges as follows:

### Jurisdiction and Venue

1. This Court has Jurisdiction over this Action under 28 U.S.C. §§ 28 U.S.C. §§ 1331 and 1343(3) and (4). Matters in Controversy Arise under 42 U.S.C. § 1983.

2. Venue Properly lies in this District Pursuant to 28 U.S.C. § 1391(b)(2), because the events giving to this cause of Action occurred at Easterling Correctional Facility, Clio, in City, State of Alabama, which is located within the Northern District of State.

-1-

## Parties

3. Plaintiff Herman Paul Johnson is and was, at all times relevant hereto, a Prisoner in the Custody of the State Department of Corrections [ADOC]. At the time of the events relevant hereto, Johnson was incercerated at Easterling. Johnson is currently incercerated at the Easterling Correctional Facility [Barbour County].

4. Plaintiff relies on the Parties described in Complaint, who at all times were assigned care and custody of Your Plaintiff.

5. Dr. Darbouze where Plaintiff to test Authority to Practice Profession of Healing disease of human beings without having obtained a Certificate of Qualification or a license to Practice at all times relevant hereto, a Physician employed or retained by [ADOC] [PHS, Prison Health Services] to provide medical services at Easterling.

6. Defendant officer Drake is a Correctional officer who at all times relevant hereto was assigned to Easterling.

7. Defendant Correctional officer Smith was, at all times relevant hereto, a Correctional officer. A Person invested with the Authority of a Particular Position or Prison, or other government-maintained detention facility for Convicted Criminals. See N.E. 2d 536, 541. "Title 14 Ala. Code 1975. He is Sued in his individual Capacity. A Correctional at Easterling Cor. Fac.

8. Defendant #3 Officer Crawford was, at all times relevant hereto, a Correctional officer at Easterling.

---

~2~

9. Defendant Barber Dairies Birmingham AL. 35207 was, at all times relevant hereto,

10. Defendant Easterling Correctional Facility was at all times relevant hereto,

11. Defendant Nurse Shehan was, at all times relevant hereto.

12. Defendant Correctional officer Keeton was, at all times relevant hereto.

## FACTS

13. Black inmate "X"2 on each side of Herman's bunk continually threatened him with verbal and physical abuse regarding window open daily, nightly, and Herman being sick. It was reported to officer "Drake" complaining that gang members threatened his life. Officer Drake laughed and would not allow Herman Paul Johnson (white prisoner) out of unit 66 to report incident, complaint to shift office supervisor. Right eye is blind, he is diabetic, medicine was withheld for around 30 days, "DR. Darbouze." Herman's blood sugar is 482 and to his knowledge, information and belief, average is 282 to 487. Herman Paul Johnson "11-1-05" request to Prison health Services Inc. Sick call Request, advising he suffers from diabetes mellitus, A complex, chronic illness with disabling long term complications. Because of medical needs the complaints factual allegations

~3~

he is recieving inadequate care for illness. Pursuant to 28 USC §1746.

14. Inmate [Herman] Requested Glasses to Sick Call. Sli; was told Sunday morning that (he) missed Appointment, that he would have to do request all over again. He informed blond headed Nurse that he is unaware of her Name Respectfully; on the other hand he advised, that is the Problem. I cannot see to Read the Names contained on Easterling Correctional Facility News letter, cannot Read letters recieved from family members.

15: Symptoms are "Bad feet; circulation, Shoes worn are flat T. Shoes which have caused harm [cause] by having to walk flat footed make heal Raw, cut up and infected and Right portion of foot is cut up also, splitting, painful.

16: Left knee is not bendable because flat shoes with No Arch, long walks to chow, HCU For treatment causes such effect. This Section 6-5-484 Provides Standard of care clearly to state an objective standard for performance of Professional duties by Physicians. Jefferson Clinic V. Roberson 626 So.2d 1295 (Ala. 1993); Phrase that degree of care, skill, and diligence used by hospitals. Henson V. Mobile Infirmary Ass'n 646 So.2d 559 (1994). Plaintiff's case also includes a medical malpractice action. Complete family care V. Sprinkle 638 So.2d 774 (A94); Gess V. United States, 952 F. Supp. 1529 (M.D. Ala. 1996);

-3-

17. Plaintiff Seeks Judgments in excess of $100,000 §6-5-486.

18: Facts that Plaintiff suffers is clearly not diminimus. 12(b)(c) ARCP. United States V. Gaubert, 499 U.S. 315, 327 (1991); Scheur 416 U.S. at 236-37.

19: As Plaintiff had filed a motion to proceed in forma pauperis and a complaint and 42 U.S.C. § 1983 in the United States District Court, charging that prison officials had violated his eighth Amendment Rights by denying him medical treatment and his Fourteenth Amendment Right to due process. Ex Parte Dozer 827 So. 2d 774 (Ala. 2002):

19: Mr. Herman Johnson "11-15-03" a Ms. Flower's called him over and advise him that he would see the Doctor Darbouze, Herman Reported Serious Pain, that he could not make it over to health center without wheel chair. After waiting all day, he did not see doctor as scheduled. After he was denied wheel chair, when he finally made it back to his assigned unit 6b, his calf's, ankles, were swelled, he couldn't go eat.

20: Defendant (Jane Doe) a CO Black female officer whom further investigation will provide name for the record, "facts" which are unchangeable. This CO Black female officer _____ on duty 7am - 3pm 11-15-05 ordered Inmate Runner _____ to put up wheel chair, that Mr. Herman walked over there, So

-4-

23. On or about 11-24-05 around 8:30 Pm, Defendant correctional officer Keeton, "Causa Proxima", as Herman awaited to take shower, as he entered, officer Keeton said, "Hey!", "Pap!", and motion him away from the shower area. This officer did not let inmate "Herman Paul Johnson take shower, and did allow [3] three Black Prisoners to take shower.

24. On several occasions prior to the file of this Complaint Plaintiff in Pain has requested and informed defendant's recently "11-1-05", for medical attention explaining he is suffering and needs glasses, cannot see, read letters from family, has to borrow his neighbor's glasses." Mr. Curtis Less Lomax #122842, -- to be sure correct treatment was provided around Sept. 2004 when Plaintiff was at Mobil County Metro Jail, for diabeties, blood sugar was running good from this Person who is legally qualified to Practice medicine, doctor or medicine. Please see Brown v. Harris, 240 F. 3d 383, 388 + N.6 (4th Cir. 2001); Chavez v. Cady, 207 F.3d 901, 904 (7th Cir. 2000); Barrie v. Grand County Utah, 119 F.3d 862, 868-69 (10th Cir. 1997); Lancaster v. Monroe County, 116 F. 3d 1419, 1425 N.6 (11th Cir. 1997):

Easterling Correctional Facility is to the Contrary of Plaintiffs right to medical care.

-6-

25: This evening 11-7-05 Plaintiff signed waiver providing that he will not take any further pills until a Doctor with a doctor with a license prescribe prescription. The medicine prescribed causes inmate dizziness, to bring to ruin or naught, disorder; upheaval; chaos, distortion in eyesight; kidney problems; Nerve damage; Since pills were not taken 11-7-05 this day by sign of waiver, Plaintiff's function is satisfactory, beneficial, he has no complaint this day 11-7-05 of feeling only upon medical prescription, complaint on sick call request provided and advised 11-7-05.

26: This is a proceeding in the nature of by what right or authority the Commissioner; Prison health services, corporation, officials, warden with being charged with the care and custody of prisoners in the State of Alabama brought by prisoner on relation of Dr. Darbouze; the above defendants; with intruding into the profession of treating or offering to treat diseases of human beings. (A profession requiring a license or certificate if the following courts meant what they said "infra.") or contract, to ask for authoritatively; demand. A Requirement Requisite to that which is necessary. Some quality or performance demanded of a person in accordance with certain fixed regulations; A factor that is judged necessary according to the nature of things, or, to the circumstances of the case, order. Command, injunction.

A profession requiring a license or certificate or other legal authorization within the state, and without having obtained a certificate of qualification from the state board of Medical Examiners of the State of Alabama.

-7-

or the license required by law," and further charging that he "is still unlawfully practicing said profession in Easterling Correctional Facility," State Alabama, Code 1940, Tit. 46, §§ 259, 261. The Prayer of the Petition includes that defendants be required "to show cause by what warrant of authority he is practicing said profession"; that he be "excluded from said profession and be prohibited from practicing the same in Barbour County, Easterling Correctional Facility, Alabama, until they shall have complied with the law"; and that "such other, further and different orders and processes be made and issued by the Court, as the Statute in such cases provides" and that there be granted "such other, further and different relief as the nature of the case may require.

[1] Authority Cited in Support of this Ground:

Fourteenth Amendment to the Constitution of the United States, 1787; Article V; Amendment V Proposed Sept. 25, 1789; Ratified Dec. 15, 1791; [14 "Id." Proposed June 13, 1866; ratified July 9, 1868; Certified July 28, 1868.

The question appears to be definitely decided by the Courts of Alabama contrary to the position taken by defendants. Owen v. State ex rel. Bailes, 240 Ala. 582, 583, 200 So. 412; Donovan v. State, 215 Ala. 53, 56, 109 So. 290; Robinson v. State ex rel. James, 212 Ala. 458, 460, 461, 102 So. 693; Ex Parte Wideman, 213 Ala. 170, 172, 104 So. 440, denying certiorari in Wideman v. State, 20 Ala. App. 422, 104 So. 438. See Bragg v. State, 134 Ala. 165, 32 So. 767, 58 L.R.A. 925, holding that the practice of "medicine" embraces the practice of osteopathy. Donovan v. State, supra [215 Ala. 55, 109 So. 291] the defendant was charged with treating diseases of human beings without a license.

-8-

[11]: There can be no question that treatment, designed to remove the "cause of disease," followed as a profession for pay, is a treatment of disease within the meaning of our law. "Chiropractics" is expressly named as one of the methods of diseases for which examination and Certificate of Qualification is required. Code (1923) § 2837 [Code 1940, Tit. 46, § 259]." Officials [Defendants] have a duty to provide care to inmate [Prisoner], See DeShaney v. Winnebago County Dept of Social Servs., 489 U.S. 189, 199-200 (1989); Estelle v. Gamble 429 U.S. 97, 104 (1976); Gutierrez v. Peters 111 F.3d 1364, 1370 (7th Cir. 97); Ellis v. Butler, 890 F.2d 1001, 1002 &N.1 (8th Cir. 1988); Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988). In Estelle v. Gamble, the Court never questioned that an inmate's painful back injury, suffered while unloading a truck, was a serious medical need. See 429 U.S. at 107.

27: Whether Jail and Prison officials violate the Constitution when they act with deliberate indifference to an inmate's serious medical needs.

With Hermans serious medical need, officials' knowledge of need; official's failure to provide treatment, causation and injury. The medical conditions, the Constitution gives inmates a right to treatment that are serious. The conditions alleged in Hermans Complaint endanger his life and are clearly serious. "Hepatitis-C: included; Gutierrez v. Peters; Ellis v. Butler; Washington v. Dugger "Paragraph 26 Supra [11]:

-9-

27: Continued: Despite the severity of his injuries, condition, and the excruciating pain plaintiff suffered as a result of these injuries. Hermans knees are painful when walking, seated, laying down, he has fallen trying to use the bathroom toilets, Conurinate standing to use urinal with no problem but kidney failure and he has fallen when access or opportunity to shower facility become available, he cannot bend to wash body without intense agonizing pain. See Harris v. Hermann, 198 F.3d 153, 159 (5th Cir. 1999)(officials allegedly ignored inmate's requests for immediate treatment of broken jaw and excruciating pain); Hathaway v. Coughlin 37 F.3d 63, 67 (2d Cir. 94)(degenerative hip condition, which caused inmate great pain and difficulty walking); Murphy v. Walker 51 F.3d 714, 719 (7th Cir. 1995)( head injury caused by slip in shower);

The law cannot demand that officers be mind readers. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 99); See also Durham v. Nu'man, 97 F.3d 862, 869 (6th Cir. 96);

Plaintiff has informed officials about his problem by:
[i]: Request form;
[ii]: Grievance form;
[iii]: Sick call slip;
[iv] Plaintiff [Prisoner] has also told officials about his problem verbally.
Reed v. McBride, 178 F.3d 849, 854 (7th Cir. 1999); [iv - i] supra]; Wynn v. Southward 251 F.3d 588, 594 (7th Cir. 2001); Chavez v. v. Cady, 207 F.3d 901, 903, 906 (7th Cir. 2000); McElligott v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999);

-10-

Defendants may not deny medical care in order to punish him. Archer v. Dutcher, 733 F.2d 14,17 (2d Cir. 84); [see Paragraph 19 Page -4- of this Amended Complaint]; [Paragraph 20: "Id."] [Par. 21: Page -5- Supra]; [Par. 22: Page -5- Supra]; Mitchell v. Aluisi, 872 F.2d 577, 581 (4th Cir. 1989); Williams v. Edwards, 547 F.2d 1206, 1216-18 (5th Cir. 1977); Parrish v. Johnson 800 F.2d 600, 605 (6th Cir. 1986); Boswell v. Sherburne County 849 F.2d 1117, 1123 (8th Cir. 1988); Toussaint v. McCarthy, 801 F.2d 1080, 1112 (9th Cir. 1986); Sealock v. Colorado, 218 F.3d 1205, 1211-12 (10th Cir. 2000); Mandel v. Doe, 888 F.2d 783, 789-90 (11th Cir. 89); Hemmings v. Gorczyk 134 F.3d 104, 109 (2d Cir. 1998); Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990); Thomas v. Town of Davie, 847 F.2d 771, 772-73 (11th Cir. 1988); Hinson v. Edmond 192 F.3d 1342, 1348-49 (11th Cir. 1999); McElligott v. Foley 182 F.3d at 1258 n.6; H.C. by Hewett v. Jarrard 786 F.2d 1080, 1086-87 (11th Cir. 1986); Harris v. Coweta County 21 F.3d 388, 394 (11th Cir. 1994);

28: On 11-23-05 Herman Johnson, following his visit with HCU with insulin 70/30, a hormone that facilitates sugar (glucose) from blood into cells throughout body. Patient reports no energy. It appears that he is not recieving exercise, careful diet and glucose. His eyesight is terrible, one eye blind, urinal is real yellow, no kidney failure, nerves are shot, at night Id. takes psychotropic medication, complains of nerve damage which numbness hands, Plaintiff further complains that he is not being provided with regular bathing schedule.

-11-

Please See "Brock V. Puckett 157 F.3d 1022, 1026 (8th Cir. 98); Alleges that failure of Prison officials to insure mobility-impaired inmates had accessible toilet Facilities resulted in a violation of inmates Constitutional rights); LaFaut V. Smith 834 F.2d 389-94 (4th cir. 87): The defendants "Donal Campbell as Commissioner individually and in his official capacity of Alabama, Ala. Board of Corrections, warden "Gwendolyn Mosely". That number of inmates in each institution in the Alabama Penal System, "Easterling Correctional facility exceeds the design capacity for that institution.

Each Institution shall maintain in working order one toilet Per inmates, one urinal or one foot of urinal trough Per inmates, one shower per 20 inmates and one lavatory per 10 inmates. Each inmate shall have a minimum of 60 sq. feet of living space. The evidence establish that inmates are housed in virtually overcrowded dormitories, these Conditions defeat the goal of rehabilitation which Prison officials have set for their institution. See James V. Wallace 382 F. Supp. 1177, 1180 N.4 (M.D.1974): In Wood V. Strickland 420 U.S. 308. The Supreme Court held that, under §1983 Plaintiff can recover money damages from State officials if the official acted either in bad faith or in "disregard of settled an disputable Law Id at 321, 95 S.ct. 992.

To Put it another way. A Public official may be held liable where he, in subjective good faith, acts in disregard to a Person's clearly established Constitutional rights. Id at 322, 95 S.Ct. 992. Failure of Prison officials to insure mobility impaired inmates had accessible toilet facilities resulted in a violation of inmates Constitutional rights); LaFaut v. Smith 834 F.2d 389, 392-94 (4th Cir. 87);

The System for Psychological or Psychiatric care at this Prison is Constitutionally inadequate. Inmates with serious mental or emotional illness or disturbances are provided unreasonable access to medical Personnel qualified to diagnose and treat such illness and disturbances. Inmates of Allegeny County Jail V. Pierce, 612 F.2d 754, 761-63 (7th Cir. 83);

Inadequate care includes "CO's" Prison Correctional officers violating Ala. Code. 1975 title 14 and 15. They harass, irritate, give trouble, annoy, pester, Provoke, hinders treatment, taunts Prisoner's by threatening, hollering, vexatious actions.

29. At Plaintiff's request, he was given Pass Permitting him to return to the Hospital 12-6-05 around 3:Pm Blood sugar level registered 529 After Defendant "officer Crawgggin belligerently coerced him to sign waiver. Plaintiff Refused because of whatever motive behind her treatment, violations of Code 1975 "Ala. § 14". This officer sent Plaintiff to eat, after return, around 8:Pm Blood

sugar level was 522. Following his visit to the HCU unit, Plaintiff continued to suffer from migraine headaches, dizziness, and general physical pain as a result of his treatment.

30. Soon after, Plaintiff filed a grievance and a civil suit against the above-named defendants for their deliberate indifference to harm caused to him throughout the above-mentioned periods. Milk was bought again that was spoiled from Easterling Correctional Facility canteen "Evidence 12-7-05." On 12-7-05 Plaintiff addressed defendants' Barber Dairies Birmingham AL. 35209; Requesting damages "50.00 dollars as compensatory damages 12-7-05.

31. After filing the civil suit, Plaintiff was the target of harassment and retaliation from defendant's correctional officers.

Count Two: Failure To Administer Adequate Medical Remedy:

32. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 31 as if fully restated herein.

33. Defendant Dr. Darbouze exercised deliberate indifference to Plaintiff's health by failing to provide adequate medical care to him. Every time he takes prescription he feels like doing nothing. 12-9-05 Glucoflage Now, Blood Sugar Count was 439, anything over is dangerous. Dr. Darbouze advise that every personell "whoever" advises him that nothing is abnormal, still Plaintiff has Pain continuously.

-14-

Advised Prison health Services again... As a Result of Dr. Darbouze; witness Ms. Gibson hereby Incorporated.

32: On 12-10-05 Defendant Nurse Shedan angrily cursed Plaintiff [inmate] using profanity when inmate returned to assigned appointment around 3pm, and ordered prisoner to set his ass down, have a seat because she had lost his damn Insulin! Quote "You can go set with the other Asshole and wait!" End Quote. The Officer Ms. Gibson witness [Pg. 3] supra. The deliberate indifference to Plaintiff's conditions and Ala. Code 1975 Tit. § 14 and 15: Plaintiff suffered further pain and mental Anguish. He continued to suffer from migraine headaches and several pain throughout his body, and Dr. Darbouze refused to provide adequate pain medication advise for Plaintiff. In addition, Plaintiff was unable to eat properly, for days after receiving care from defendant Dr. Darbouze, because swollen legs, knees, feet, the long walk to the cafeteria, refusal to order and provide Plaintiff a wheelchair, because she did not properly had.

33: Plaintiff realleges and incorporates by reference his allegations in paragraphs 1 through 32 as if fully reinstated herein.

34: Almost immediately after Plaintiff filed Grievance's, Complaint, Civil Action, defendants, 12-11-05 "Plaintiff" went to Appointment, officer [John Doe] repeatedly harassed and caused harm to Plaintiff in retaliation, after his [Plaintiff] arrival [John doe "co"] on duty ordered, "what are you doing here?" Plaintiff advised him, "I have an Appointment." Officer Jd, Commanded, "Your late!" Plaintiff advise this officer was informed that inmate was released from Dorm, Defendant "John Doe", threatened Prisoner, "Mr. Johnson", You can sign a waiver or nothing! If you are late again for your Appointment Mr. Johnson, I'll place you in Segregation for Creating a Security and health hazard. This officer "John doe", Practices continues. Mr. Johnson is at risk of further serious harm, including ongoing damage to left knee [from Fall in Shower] Nerves and blood sugar level this night was 566 and blood vessels due to inadequate medication to regulate Sugar control; blindness; kidney function failure, Central Nervous System damage caused by inadequate medical attention and medication, low blood sugar and consequent disabilities.

35. A short time "within a month later" after Plaintiff had filed a grievance, suit complaint's against defendant's for the above incidents. Dec. 12-05 officer Smith verbally harressed Plaintiff in retaliation for Plaintiff's filing of such. Defendant Smith interfered with Appointment by ordering "Your late" and would not allow Prisoner to enter HCU and Instead ordered Inmate to sign a waiver and Inmate thereby refused advising "I have an Appointment" and officer Smith angrily commanded "No You dont! Your late, Now sign a waiver!" Inmate refused, officer Smith commanded "Leave or I'll put you in lock up "6A Segregation". Inmate obeyed order and was denied his right to medical care Appointment.

36. These acts represent a pattern of events (paragraph 1-through 35 "Supra".) demonstrating intentional retaliation against Plaintiff by defendants (Par. 1 through 35 supra") [ADOC] for filing grievances and civil rights action and have caused Plaintiff further mental anguish as a result.

37. At 6:03 pm 12-17-05 Inter Com breaking up when Herman Johnson was relayed and ordered to Report to the cubicle.

38. Around 6:20 Pm 12-17-05 Prisoner's Reported Seeing Herman Johnson carried over to "HCU", Please see declerations of "Phillip Closky" #271450 and Maxwell Reeder #148293 And Curtis Leon Lomax 122-842.

39. Plaintiff realleges and incorporates by reference his allegations in paragraphs 1 through 38 as if fully reinstated herein.

Wherefore, Herman Paul Johnson prays for judgment in his favor and damages in his favor against all defendants in an amount sufficient to compensate him for the pain and suffering, mental anguish suffered by them due to the deliberate indifference and intentional misconduct of defendants, but in no event less than $1,500,000 and cost of court fees; and such additional relief as the Court may deem just and proper.

Respectfully Submitted

Herman Paul Johnson
242189 Dorm 6b-
Easterling Correctional
Facility 200 Wallace Dr.
Clio Al. 36017

Certificate of Service

Hereby Served this the 12-20-05 pursuant to U.S. mail, 28 USC § 1746.

In The Middle District of Alabama
15 Lee Street
Montgomery, AL 36104

RECEIVED
2005 DEC 22 P 2: 54
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT

Declaration under Penalty of Perjury of Curtis Leon Lomax 122842 being competent to make this declaration and having personal knowledge of the matters stated therein, declares pursuant to 28 U.S.C. § 1746; And The following witnesses.

1. On the Sat. 12-17-05 Herman was called to Report to HCU for inquiry of why he didn't report and take his insulin. The reason I witness is he was sick, to week to walk over to HCU by self. I asked officer Baker [Shift 2-10 PM, around 6 PM] and reported Herman was to week, needed a wheel chair; officer Baker said Sgt. ordered that he go there some kind of a way. Because they wouldn't give him a wheel chair, and wouldn't let him go on a stretcher. [In order] They said that he [officer Baker] said if he don't go they [Sgt] would lock him up in 6A. Herman said: I cant make it, you'l have to lock me up. [Then, in order for him not to be locked up] I asked officer Baker [who was nice or cared enough to let two inmates [Inmate: Willie Mitchell 197300 and Inmate: Phillip Crosbey 271450 Escort to HCU.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on Dec. 19-2005.

-1-

Curtis Leon Lomax 122842

Declaration under Penalty of Perjury of Maxwell Reeder, Phillip Crosby being Competent to make this declaration and having Personal Knowledge of the matters stated therein, declares Pursuant to 28 U.S.C. § 1746:

After I halted escort Herman to HCU, Ms. Gibson (Officer) open door she ordered that it didn't take 3 inmates to escort him to HCU. After entering HCU, I ask Ms. Gibson, can we stay, make sure he alright, get back to the dorm. She stated, no he fine. She ran us off. We had to escort him up there in the rain.

I Maxwell Reeder 148293 halled camp inmate Johnson over to HCU because he was feeling dizzy, weak, had to hold him stable because he couldn't walk. Officer "Davis" in the cubicle would not call for a stretcher or a wheel chair. He just said take him over there. After got him to HCU. The Lady nurse told us to set him in a chair and leave.

Pursuant to 28 U.S.C. § 1746, declared under Penalty of Perjury that the foregoing is true and Correct.
Executed on Dec. 19-2005.

Maxwell Reeder # 6-B-62  148293

Phillip Crosby 221450