# 2:05-CV-1157-WKW

# DEFENDANT'S SPECIAL REPORT & ANSWER
# PAGES 14 - 26

# BALCH & BINGHAM

both of Plaintiff's eyes. (Fortin Affidavit at ¶ 6). Dr. Fortin concluded the scar could be indicative of the macular degeneration or some other trauma to the eye. (Id.). Dr. Fortin concluded that Plaintiff does not suffer from diabetic retinopathy, a condition causing the blood vessels in the eye to swell and resulting impairment of vision. (Id.). Importantly, Dr. Fortin concluded laser surgery would not be appropriate in Plaintiff's case, because the surgery would not cure, reverse or prevent Plaintiff's macular degeneration and it would not correct the scar on his eyes or alter his vision to any significant degree. (Id. at ¶ 8). Dr. Fortin recommended that Plaintiff be fitted for glasses and ordered that he undergo a follow-up examination in twelve (12) months. (Id. at ¶ 9). Plaintiff signed a "Receipt of Medical Equipment/Appliance Form" indicating he had received glasses. (Receipt of Medical Equipment Form attached to Long Affidavit as Exhibit 15).

6.    **TREATMENT FOR ARTHRITIS IN PLAINTIFF'S KNEE**

Plaintiff suffers from severe arthritis in his left knee. (Darbouze Affidavit at ¶ 17). On November 22, 2005, Dr. Darbouze ordered Plaintiff a cane to assist him in moving around Easterling and, on that same day, Plaintiff signed a release of medical equipment form indicating that he had received the cane. (Darbouze Affidavit at ¶ 17; Receipt of Medical Equipment Form attached to Long Affidavit as Exhibit 16). Plaintiff complains he has not been provided a wheelchair when he has needed one. (Complaint at ¶ 19). According to Dr. Darbouze, Plaintiff's arthritis is not so severe that he needs to be restricted to a wheelchair at all times. (Darbouze Affidavit at 17). In fact, exercise is good for Plaintiff's overall health. (Id.). On December 29, 2005, Dr. Darbouze reordered that Plaintiff be provided a walking cane and Plaintiff again signed a form indicating that he had received the cane. (Darbouze Affidavit at ¶ 17; Receipt of Medical Equipment Form attached to Long Affidavit as Exhibit 17).

In addition, Dr. Darbouze prescribed Plaintiff Aspirin and Motrin as needed to alleviate the pain in his knee. (Darbouze Affidavit at ¶ 17). However, due to the deteriorated condition of Plaintiff's liver as a result of the cirrhosis and the gastrointestinal bleeding, Dr. Darbouze can only prescribe Tylenol or Motrin in limited amounts as those medications can aggravate Plaintiff's existing medical problems. (Id.).

Dr. Darbouze also ordered profiles for Plaintiff in an effort to prevent pain resulting from his arthritic knee. (Darbouze Affidavit at ¶ 7; Special Needs Communication Forms at Exhibit 5). On October 14, 2005 Dr. Darbouze ordered Plaintiff a bottom bunk, no prolonged standing and excused him from work duty. (Id.) Dr. Darbouze renewed these ordered profiles on December 29, 2005. (Receipt of Medical Equipment Form attached to Long Affidavit as Exhibit 6).

    **7.    OTHER MEDICAL TREATMENT PROVIDED TO PLAINTIFF**

Plaintiff complains that he suffers from migraines, "kidney function failure, central nervous system damage and consequent disabilities." In addition to the treatment Dr. Darbouze has provided to Plaintiff for his diabetes, eyes, anemia and arthritis, he has provided Plaintiff medical treatment for other medical conditions including, but not limited to, cirrhosis, hepatitis C, and gastro-intestinal illness.[5] (Darbouze Affidavit at ¶ 3). Dr. Darbouze has at all times prescribed Plaintiff the requisite medication as needed, ordered appropriate testing and lab work and referred him to outside medical care providers when appropriate, including ordering emergency medical care when needed. (Id.).

---

[5] Plaintiff includes allegations in his Complaint regarding the psychiatric care he has received while incarcerated at Easterling. (Complaint at ¶ 28). However, Dr. Darbouze treats only Plaintiff's physical medical conditions. (Dr. Darbouze Affidavit at ¶ 3; Mental Health Services Treatment Plan attached to Long Affidavit as Exhibit 21).

Plaintiff did not submit any sick call requests or grievances complaining of kidney function failure or migraines. (Sick Call Request Forms attached to Long Affidavit as Exhibit 3). In addition, Plaintiff did not otherwise complain to Dr. Darbouze or the PHS medical staff about migraines or kidney function failure. (Id.). Moreover, Plaintiff did not submit a sick call request or otherwise complained to Dr. Darbouze or the medical staff at Easterling about numbness in his hands or central nervous system damages. (Darbouze Affidavit at ¶ 21; Sick Call Request Forms attached to Long Affidavit as Exhibit 3). However, Plaintiff's medical history indicates he suffered a stroke in 1995. (Id.). As Dr. Darbouze states in his affidavit, any numbness experienced by Plaintiff is most likely a result of his stroke. (Id.).

### III.   DISCUSSION

####    A.   PLAINTIFF'S CLAIMS ARE BARRED BY THE PRISON LITIGATION REFORM ACT ("PLRA") BECAUSE PLAINTIFF FAILS TO ESTABLISH THAT HE EXHAUSTED HIS ADMINISTRATIVE REMEDIES

Title 42 U.S.C. §1997e(a) of the Prison Litigation Reform Act (PLRA) mandates that "[n]o action may be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Any remedy available under § 1983 before this Court is not available unless and until Plaintiff utilizes the grievance process available within Alabama's correctional system. See e.g. Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding that invoking the grievance process is "a pre-condition to filing an action in federal court."); A.N.R. v. Caldwell, 111 F. Supp. 2d 1294, 1297-99 (M.D. Ala. 2000) (dismissing prisoner's complaint for failure to exhaust administrative remedies through the

available grievance process). In <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1328 (11th Cir. 1998), the Court noted:

> In summary we conclude that Section 1997 e(a) requires Alexander to submit his claims for monetary and injunctive relief to the [Federal Bureau of Prisons] available prison grievance program, even if the relief offered by the program does not appear to be "plain, speedy, and effective," before filing those claims in federal court. The judicially created futility and inadequacy doctrines do not survive the PLRA's mandatory exhaustion requirement.

The Eleventh Circuit has recently spoken to this very issue and affirmed the dismissal of prisoner complaints on the ground that the plaintiff failed to exhaust administrative grievance procedures. See e.g. <u>Hall v. Richardson</u>, 2005 WL 1939431 (11th Cir. 2005); <u>Logue v. Chatham County Detention Center</u>, 2005 WL 2446083 (11th Cir. 2005). According to the Eleventh Circuit, a prisoner's claims must be dismissed under Rule 12(b)(1) or Rule 12(b)(6) under the Federal Rule of Civil Procedure if he has failed to exhaust his administrative remedies. <u>Chandler</u>, 379 F.3d at 1286.

As already discussed at length above, Plaintiff was notified of the grievance procedure upon his incarceration and transfer to Easterling. (Wilson Affidavit at ¶ 5). However, Plaintiff has not filed a single grievance while incarcerated at Easterling. (<u>Id.</u>). By failing to utilize the grievance procedures available to him, Plaintiff failed to exhaust administrative remedies available to him as required by the PLRA. As such, Defendants respectfully request that this Court dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the <u>Federal Rules of Civil Procedure</u>,.

B.   **PLAINTIFF FAILS TO STATE A CLAIM AGAINST DR. DARBOUZE FOR ANY ALLEGED CONSTITUTIONAL VIOLATION.**

The Eighth Amendment of the United States Constitution governs the conditions of confinement for prisoners and specifically requires state actors to provide necessary medical care for those it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 251 (1976). An Eighth Amendment violation may be actionable under 42 U.S.C. § 1983.[6] Under § 1983 jurisprudence, "[i]t is well-settled that the 'deliberate-indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment.'" McElligot v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (quoting Estelle v. Gamble, (quoting in turn Gregg v. Georgia, 428 U.S. 153, 182-83, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976))). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 104-05, 97 S. Ct. at 291. "However, not every claim asserted by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. Medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive to

---

[6] 42 U.S.C. § 1983 provides, in pertinent part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

shock the conscious or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Nevertheless, inadvertent or even negligent failure to provide adequate medical care does not rise to the level of an Eighth Amendment violation. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

In McElligot, the Eleventh Circuit Court of Appeals considered whether the medical staff had been deliberately indifferent in failing to diagnose and treat an inmate's colon cancer. 182 F.3d at 1256. The Court stated,

> A complaint that a physician has been negligent in diagnosing and treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

McElligot, 182 F.3d at 1254 (quoting Estelle, 429 U.S. at 104) (citations and some quotations omitted).

At the time Plaintiff was transferred to Easterling, he was in overall poor health and had already been diagnosed with multiple medical conditions. (Darbouze Affidavit at ¶ 3). Nevertheless, since Plaintiff's incarceration at Easterling, Dr. Darbouze and the medical staff have at all times provided appropriate treatment to Plaintiff for all of his medical conditions including, but not limited to, diabetes, cirrhosis, hepatitis C, arthritis and anemia. (Darbouze Affidavit at ¶ 21). In addition, Dr. Darbouze has timely referred Plaintiff to health care providers outside Easterling when it appeared necessary to properly treat and diagnose Plaintiff's medical conditions. (Darbouze Affidavit at ¶¶ 8, 18). For example, Dr. Darbouze referred Plaintiff to Dr. Fortin and the TRMC for further treatment and diagnosis. (Id.).

To the extent that Plaintiff's allegations in his Complaint relate to his diabetes, hepatitis C and cirrhosis, Plaintiff has shown that he has experienced a serious medical need, i.e. a condition "that has been diagnosed by a physician as mandating treatment." Farrow, 320 F.3d at 1243 (citing Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)). Otherwise, Plaintiff has not shown that his Complaints relate to a serious medical need. However, while it is undisputed that Plaintiff has been diagnosed with diabetes and cirrhosis, which are both conditions mandating treatment by a physician, he has failed to allege facts to support the "subjective component" of an Eighth Amendment violation. See Chandler, 379 F.3d at 1289-90.

Even if Plaintiff has alleged a serious medical need, he must also allege the "subjective" component of an Eighth Amendment violation. Chandler, 379 F.3d at 1289-90. Plaintiff must allege that Dr. Darbouze acted with a "deliberate indifference" to a serious medical need. Helling, 509 U.S. at 36, 113 S. Ct. 2475. To establish deliberate indifference, Plaintiff must allege that (1) Dr. Darbouze had subjective knowledge of a risk of serious harm; (2) he disregarded that risk; and (3) his conduct amounted to more than mere negligence. Cagle v. Sutherland, 334 F.3d 980, 987 (11th Cir. 2003) (quoting McElligott v. Foley, 182 F.3d at 1255.

In cases such as the present when a prisoner actually receives medical treatment, courts have altered their analysis of § 1983 medical claims. As the Eleventh Circuit noted, "society does not expect [and the Eighth Amendment does not guarantee] that prisoners will have unqualified access to health care." Hill, 40 F. 3d at 1186 (internal citations and quotations omitted).

> Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference. See Bass v. Sullivan, 550 F.2d 229, 231-32 (5th Cir.), cert. denied, 434 U.S. 864, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977); accord,

> Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (1st Cir.1981) ("Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law."). The only medical problem alleged to have gone untreated was Hamm's rash, and the district court had ample factual grounds on which to find that Hamm failed to prove on this allegation deliberate indifference to his serious medical needs. The district court was not clearly erroneous in holding that Hamm did not meet his burden of proof on this issue.

Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

When an inmate claims "different treatment should have been provided," such a claim "is tantamount to a medical judgment call," not an Eighth Amendment violation. McElligott v. Foley, 182 F.3d at 1259. Even if a prisoner claims that a prison medical provider "deviated from established standards," such a claim is "only one of mere negligence." Id. In Estelle, the United States Supreme Court made clear that medical judgment calls are not grounds for deliberate indifference, nor is medical malpractice. 429 U.S. at 107. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106. A mere difference of opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone will not give rise to a cause of action under the Eighth Amendment. Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976); see also Estelle, 429 U.S. at 106-08. It is apparent from the laundry list of allegations in Plaintiff's Complaint that he believes Dr. Darbouze should have chosen a different course of medical treatment. This alone is insufficient to support a constitutional violation.

In White v. Glover, 2005 Lexis 33886, * 8 (Ala. M.D. 2005), the Court recommended summary judgment in favor of defendant health care providers where the medical records showed that the medical personnel performed frequent blood pressure checks to monitor diabetes and maintain those conditions within proper levels. Indeed, the attached medical records show

that Dr. Darbouze diligently examined and evaluated Plaintiff concerning his various health complaints. See White, 2005 Lexis 33886, *7. Moreover, it is undisputed that Dr. Darbouze and the Easterling medical staff checked Plaintiff's blood sugar daily in order to monitor his diabetes and to control his blood sugar level. See id. Similarly, Plaintiff alleged no facts to suggest that Dr. Darbouze in any way disregarded a substantial risk to his health, and has therefore failed to establish that Dr. Darbouze acted with deliberate indifference to his medical needs. See id. at *8.

As to claims of delayed medical treatment, the Eleventh Circuit has instructed courts to be hesitant to find an Eighth Amendment violation when prison officials provide medical care to prison inmates. McElligot, 182 F.3d at 1259 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). In Hill, the Court of Appeals for the Eleventh Circuit, reiterated the standard for assessing whether there has been a delay of medical care. 40 F.3d at 1186. In sum, a prisoner's § 1983 claim for an alleged delay in medical treatment fails unless the inmate alleges facts indicating a lack "of the prison official's subjective awareness" of the alleged medical condition and an "intentional refusal [by the official] to provide . . . care." 40 F.3d at 1186; Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir. 1996)).

Plaintiff does not specifically allege there has been a delay in his medical treatment in his Complaint; however, should this Court liberally interpret his Complaint in such a manner, it is clearly Plaintiff's burden to allege that Dr. Darbouze knew that Plaintiff was suffering from the conditions he complains of *and* that he intentionally refused to provide Plaintiff treatment. See Id. Plaintiff never filed a grievance complaining of any of the medical problems alleged in his Complaint. (Darbouze Affidavit at ¶ 5). Of course, Dr. Darbouze knew Plaintiff suffers from

diabetes, arthritis, problems with vision and related symptoms; nonetheless, Dr. Darbouze at all times provided Plaintiff appropriate treatment on a regular basis. (Id. at ¶¶ 5, 14-21). On the other hand, Dr. Darbouze had no idea that Plaintiff was experiencing numbness in his hands or cracking and swelling in his feet because Plaintiff did not complete a sick call request form to alert or tell Dr. Darbouze about these problems. (Id. at ¶¶ 16 and 20).

> II. **PLAINTIFF TO ALLEGE THAT HE SUFFERED ANY PHYSICAL INJURY AS A RESULT OF ANY ACT OR OMISSION OF DEFENDANTS.**

Finally, Plaintiff's Complaint is due to be dismissed because there is no evidence that Dr. Darbouze caused him to suffer any physical injury. 42 U.S.C. § 1997e(e) states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury without a prior showing of physical injury.

42 U.S.C. § 1997e(e) (1996). This section applies to prisoners' claims under § 1983. Harris, 190 F.3d at 1286. Plaintiff states in his Complaint that he has cut-up and infected feet, swollen legs and feet, damage to his knee, blindness, nervous system damage, and consequent disabilities (See Complaint at ¶ 34); however, Plaintiff does not allege that not does he submit any evidence to suggest that Dr. Darbouze caused him to suffer any of these physical injuries. See Lassan v. City of Orange Beach, 2000 WL 1844683, * 4 (S.D. Ala. 2000) ("Plaintiff's allegations of physical injury are not well connected to Plaintiff's conditions of confinement and thus to the alleged mental and emotional injuries. There may be other proximate causes for these alleged physical injuries or there may also be pre-existing conditions"). Again, all of these alleged medical conditions are symptoms of diseases that Plaintiff had already been diagnosed with at the time he was admitted to Easterling. (Darbouze Affidavit at ¶ 3). While Dr. Darbouze has diligently treated Plaintiff for these medical conditions, including ordering profiles, testing and

equipment and adjusting medication as needed, he cannot fully eliminate all of the symptoms Plaintiff experiences and ensure that Plaintiff feel well all the time. (See id.).

### III.  DR. DARBOUZE HAS NOT COMMITTED MEDICAL MALPRACTICE[7]

Plaintiff makes a passing reference in paragraph 16 of his Complaint that Dr. Darbouze has violated the Alabama Medical Liability Act because "[Plaintiff's] left knee is not bendable because flat shoes with not arch, long walks to chow, [Health Care Unit] causes such effect." This argument is incoherent; therefore, Plaintiff has failed to meet the stringent pleading requirements promulgated under the AMLA.

The AMLA[8] imposes a heightened pleading requirement upon persons attempting to seek redress under the Act such as Plaintiff. Ala. Code § 6-5-551 states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. **The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts.** The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based;

---

[7] If the Court should for whatever reason dismiss Plaintiff's claims under 42 U.S.C. § 1983, then Dr. Darbouze requests that this Court not exercise pendent jurisdiction over Plaintiff's state law claims and remand such claims to state court.

[8] The AMLA applies to "health care provider[s]," which includes any "medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in Section 6-5-481." Ala. Code § 6-5-542(1) (1975). Ala. Code § 6-5-481 defines "other health care providers" as including any "professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services." Ala. Code § 6-5-481(8) (1975). Though Plaintiff asserts on the face of his Complaint that Dr. Darbouze falls within the category of persons arguably governed by the AMLA, he fails to state sufficient facts to demonstrate any right to recover against these individuals under the Act.

> provided, however, that any such amendment must be made at least 90 days before trial. **Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.** Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission.

The requirements of § 6-5-551 are clear and specific regarding the matters which must appear in a complaint asserting a claim under AMLA. Indeed, § 6-5-551 mandates that any complaint failing to comply with this heightened pleading requirement "shall be subject to dismissal for failure to state a claim upon which relief may be granted." Moreover, courts interpret this requirement as requiring a complaint to "focus … on the individual practitioner whose specific action is alleged to have fallen below the standard of care." Husby v. South Alabama Nursing Home, Inc., 712 So.2d 750, 753 (Ala. 1998). In other words, Plaintiff must identify the "specific action" of Defendants which falls below the applicable standard of care. Id. Plaintiff's Complaint does not reference any of these specific requirements or any specific conduct by Dr. Darbouze which allegedly resulted in the failure of Plaintiff to receive his sack lunches.

Plaintiff otherwise fails to state a claim upon which relief can be granted under the AMLA because he fails to state the essential elements of a claim under the AMLA. At best, Plaintiff's allegations as to his AMLA claim amount to a generalized set of complaints which apparently relate to the arthritis in his knee, although it is unclear. Moreover, Plaintiff fails to identify the specific date or time when Defendants' conduct violated the applicable standard of care or the place where such alleged act or omission occurred. In sum, Plaintiff fails to specify or describe any of the acts or omissions on the part of Dr. Darbouze sufficient to subject him to liability under the AMLA.

## VI. <u>CONCLUSION</u>

Based on the foregoing facts and legal arguments, Dr. Darbouze respectfully requests that this Court dismiss Plaintiff's claims as they facially appear to lack merit, are frivolous and fail to state a claim upon which relief can be granted.