IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**HERMAN PAUL JOHNSON,**
**#242189**

      **Plaintiff**

v.                                    02:05-CV-1157-WKW

**ALABAMA DEPARTMENT OF**
**CORRECTIONS, Et al**

      **Defendants**

### SPECIAL REPORT ON BEHALF OF DEFENDANTS ALABAMA DEPARTMENT OF CORRECTIONS, CAMPBELL, MOSELY, SMITH AND KEETON

Come now Defendants Alabama Department of Corrections, Donal Campbell, Gwendolyn Mosley, Mike Smith and Munchie Keeton, by and through counsel, to file this their Special Report as ordered by this Honorable Court on 13 February 2006.

### PARTIES

1. Herman Paul Johnson, #242189, the Plaintiff, is incarcerated at the Easterling correctional Facility.

2. Donal Campbell, Defendant, was the Commissioner of Corrections at all times pertinent to the Complaint, He is sued individually and in his official capacity.

3. Gwendolyn Mosley, Defendant, is employed by the Department of Corrections as the Warden III at Easterling Correctional Facility and was at all times pertinent to the Complaint. She is sued individually and in her official capacity.

4. Mike Smith, Defendant, is employed by the Department of Corrections as a Correctional Officer at Easterling Correctional Facility and was at all times pertinent to the Complaint. He is sued individually and in his official capacity.

5. Munchie Keeton, Defendant, is employed by the Department of Corrections as a Correctional Officer at Easterling Correctional Facility and was at all time pertinent to the Complaint. He is sued individually and in his official capacity.

## PLAINTIFF'S ALLEGATIONS

The Plaintiff, Herman Paul Johnson, is incarcerated at the Easterling Correctional Facility where he suffers from ailments and maladies attributed by him to diabetes. He avers that the physician for ECF is not properly licensed to practice medicine in Alabama. He further alleges that he is not receiving proper and appropriate medical care for his afflictions, including but not limited to bad eyesight for which he needs glasses that he has not received, insufficient treatment for his diabetes with the result that he fears that he will suffer damage to his nerves, eyes, kidneys and blood vessels, blindness, kidney failure, lower extremity amputations, heart attacks, strokes and/or other disabilities. (See paragraph 14 of Complaint). Although the Plaintiff complains throughout his Complaint and his Amended Complaint that he has been denied eyeglasses, please note that in paragraph 12 of his Complaint that he states, "In the meantime, Doctor has ordered that Plaintiff be provided reading glasses." The Plaintiff best summed up the majority of his allegations in paragraph 10 of his Complaint when the writ writer states, "This inmate complains that he has not been provided medical

attention he is entitled to." He avers that the Defendants have demonstrated deliberate indifference to his known medical needs.

In his Amended Complaint, the Plaintiff avers that he was subjected to retaliation by Correctional Officers for filing this civil action. In Paragraph 35, the Plaintiff avers that on 12 December 2005 Defendant Smith "verbally harassed Plaintiff in retaliation for Plaintiff's filing of such [civil action]." There are no specific retaliatory allegations made by the Plaintiff against Officer Keeton, Warden Mosley or Commissioner Campbell.

The Plaintiff seeks both compensatory damages and injunctive relief.

## **DEFENDANTS' RESPONSES TO ALLEGATIONS**

1. Defendants deny that they were deliberately indifferent to Plaintiff's medical needs.

2. Defendants deny that the Plaintiff was subjected to retaliation and harassment as a result of filing this civil action.

3. The Plaintiff failed to state a claim upon which relief can be granted pursuant to 42 USC §1983 or any other cause of action.

4. Defendants assert that there is no evidence to support Plaintiff's claims.

5. Defendants assert Plaintiff has failed to show there is any genuine issue of material fact in this case.

6. Defendants deny that any of Plaintiff's constitutional rights have been violated.

7. Defendants deny all material allegations not expressly admitted herein and demand strict proof thereof.

8. Defendants deny that they retaliated against the Plaintiff for filing this civil action.

9. Defendants assert the defenses of sovereign immunity and qualified immunity.

10. Under 42 U.S.C. 1983 respondeat superior is not available to find an individual liable.

11. Defendants assert immunity pursuant to Article 1, Section 14 of the Constitution of Alabama 1901 and the Eleventh Amendment to the United States Constitution.

12. Defendants assert State discretionary immunity.

## DEFENDANTS' EXHIBITS

The Defendants hereby submit the following exhibits:

Exhibit 1 – Affidavit of Defendant Gwendolyn Mosley

Exhibit 2 – Affidavit of Defendant Mike Smith

Exhibit 3 – Affidavit of Defendant Munchie Keeton

## STATEMENT OF FACTS

Herman Paul Johnson, the Plaintiff, was assigned to the Easterling Correctional Facility on 29 September 2005. On 11 November 2005, he was furnished eyeglasses by the Department of Corrections by the Easterling Health Care Units. (Exhibit 1, Mosley Affidavit). He filed this civil action on 5 December 2005 in which he complained of lack of adequate medical treatment and the failure of the Department of Corrections to furnish eyeglasses to him. He filed his Second Amended Complaint on 22 December 2005 in

which he reiterated that he was not receiving appropriate medical care and added averments that correctional officers, including Officer Smith, retaliated against him for filing the civil action. According to court records, the first defendant to be served with the Complaint was Warden Mosley who was served on 26 January 2006. Officers Smith and Keeton were not served until 14 February 2006.

"Inmate Herman Paul Johnson, #242189, was assigned to Easterling Correctional Facility on September 29, 2005. According to [Easterling] Health Care Unit, Health Services Administrator (HAS) Ms. Kay Wilson, the Health Care Unit has Grievance Forms for all inmates who have a complaint about the Health Care Service. Inmates who are not satisfied with the response of the grievance can get an Inmate Grievance Appeal Form from the Health Care Unit. According to HAS Wilson, inmate Johnson does not have diabetic retinopathy. He does have cataracts in both eyes, but surgery is not recommended. Optical correction with eye glasses was recommended."

"On November 7, 2005, inmate Johnson signed a waiver refusing his medication for his blood pressure. On November 11, 2005, inmate Johnson received a pair of eye glasses. He is positive for Hepatitis C and he is not a candidate for treatment. He has Cirrhosis of the Liver. On December 7, 2005, inmate Johnson was seen at the Health Care Unit for chronic care and a foot exam. The exam indicated he has no loss of sensation in his feet."

"Inmate Johnson has signed numerous waivers for sick call. He was last seen by Dr. Darbouze on February 15, 2005 and has a follow-up in one month."

"Inmate Johnson's treatment will be based on the diagnosis of the Professional medical staff." [Exhibit 1, Mosley Affidavit].

Neither Defendant Smith or Defendant Keeton was aware of the filing of the civil action by the Defendant until they were served, (Exhibit 2, Smith Exhibit; Exhibit 3, Keeton Affidavit]. Court records reflect that Defendants Smith and Keeton were served on 14 February 2006. Both Defendants Smith and Keeton deny that they harassed the Plaintiff or retaliated in any manner for the filing of this civil action. [Exhibits 2, 3].

### SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317

(1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

## ARGUMENT

The Plaintiff seeks damages as well as injunctive relief in this action which was filed pursuant to 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Defendant Donal Campbell was the Commissioner of the Department of Corrections and is sued individually and in his official capacity. Defendant Gwendolyn Mosley was the Warden III at Easterling CF and responsible for the daily operation of the prison. She is sued individually and in her official capacity. Defendant Mike Smith was

a Correctional Officer I at Easterling and is sued individually and in his official capacity. Defendant Munchie Keeton was a Correctional Officer I at Easterling and is sued individually and in his official capacity.

Neither Campbell or Mosley personally participated in the events concerning the medical care, or lack thereof, that are alleged by the plaintiff except to the extent that Campbell was responsible for the management of the Department of Corrections and Mosley was responsible for the day to day operations of Easterling.. Therefore they could only be vicariously liable, at best, for any constitutional violations of the Plaintiff's right to be free of cruel and unusual punishment that allegedly occurred at Easterling CF as a result of any alleged lack of medical treatment of the Plaintiff or for any alleged harassment of the Plaintiff for filing this civil action.

The law is well settled that a defendant cannot be held liable, individually or in his official capacities, for actions brought pursuant to 42 U.S. C. § 1983 under the doctrine of respondeat superior or on the basis of vicarious liability. *Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir 1994); Brown v. Crawford, 906 F. 2d 667, 671 (11th Cir. 1990); Zatler v. Wainwright, 802 F. 2d 397, 401 (11th Cir. 1986).*

The Plaintiff seeks to hold Defendants Campbell and Mosley liable in their roles as supervisor. To recover individually from one who acts in a supervisory capacity, the Plaintiff must show that he is liable either through his personal participation in the acts comprising the alleged constitutional violation or the existence of a causal connection linking his actions with the violation. *Hill v. Dekalb Regional Youth Facility, 40 F. 3d 1176, 1192 (11th Cir. 1994).* A causal connection can be shown when there is a history of widespread abuse that should put the supervisor on notice of the problem, and the

supervisor nevertheless fails to take corrective measures. *Bozeman v. Orum, 199 F. Supp. 2d 1216, 1233 (M.D. Ala.2002), citing Hartley v. Parnell, 193 F. 3d 1263, 1269 (11th Cir. 1999)*. Such a connection could also be shown when an improper custom or policy established by the supervisor results in deliberate indifference to constitutional rights. *Id., citing Rivas v. Freeman, 940 F. 2d 1491*. The Plaintiff did not set forth sufficient facts to demonstrate that the Defendants Campbell or Mosley have any supervisory liability.

The Defendants, in their official capacities, have asserted that they are immune from suit pursuant to the Eleventh Amendment and § 14, Alabama Constitution of 1901. When a government defendant is sued in his official capacity under federal law, the claim is treated as a claim directly against the state or local government entity. Consequently the Defendant is protected by sovereign immunity under the Eleventh Amendment for claims for money damages against him in his official capacities. *Jackson v. Georgia Dep't of Trans., 16 F 3d 1573, 1575 (11th Cir. 1994); Lancaster v. Monroe County, Ala., 116 F. 3d*. 1419. The Defendants have not consented to suit nor have they waived their right to sovereign immunity. The State of Alabama has not consented to suit or waived its right to sovereign immunity as evidence by § 14, Alabama Constitution of 1901.

Sued in their individual capacities also, the Defendants assert that they are entitled to the protection of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno,* 334 F.3d 991, 994 (11th Cir.2003)(quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d

666 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple,* 334 F.3d at 995 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

The Eighth Amendment protects incarcerated prisoners from punishment that is "cruel and unusual." *Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986); *see also Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408-09, 51 L.Ed.2d 711 (1977). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain ..., the infliction of pain totally without penological justification ..., [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White,* 813 F.2d 318, 321 (11th Cir.1987) (citing *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981)). Further, "[t]he 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby,* 379 F.3d 1278, 1288 (11th Cir.2004) (citing *Rhodes,* 452 U.S. at 345-46, 101 S.Ct. at 2398- 99). The Eighth Amendment, however, "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.' " *Campbell v. Sikes,* 169 F.3d 1353, 1362 (11th Cir.1999) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). Furthermore, "the Constitution does not mandate comfortable prisons." *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400. "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' " *Chandler,* 379 F.3d at 1289 (quoting *Rhodes,* 452

U.S. at 347, 101 S.Ct. at 2399). Prison conditions violate the Eighth Amendment only when they "involve the wanton and unnecessary infliction of pain." *Id.*

In *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the United States Supreme Court reiterated the State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.... The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs-- *e.g.,* food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.
> *5 DeShaney,* 489 U.S. at 199-200, 109 S.Ct. at 1005-1006 (citations omitted).

In order to prevail on an Eighth Amendment inhumane conditions of confinement claim, an inmate must make both an objective and a subjective showing. First, the inmate must prove that the conditions of confinement were, "objectively, 'sufficiently serious" ' so as to amount to the denial of a basic human need. *Chandler,* 379 F.3d at 1289 (quoting *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)). A prisoner must prove the denial of "the minimal civilized measure of life's necessities." *Chandler,* 379 F.3d at 1289 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399). The challenged condition must be "extreme." *Id.* Although an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35,

113 S.Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S.Ct. at 2482.

Second, the inmate must prove that the prison official was subjectively "deliberately indifferent" to a substantial risk of harm. *Farmer v. Brennan,* 511 U.S. 825, 828-29, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838, 114 S.Ct. at 1979. In addition, prison officials are not liable even if they actually knew of a risk if they responded reasonably to the risk. *Farmer,* 511 U.S. at 844, 114 S.Ct. at 1982-83. Moreover, "[a] plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1028 (11th Cir.2001) (en banc) (alteration in original).

It is well settled that the "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 182-83, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105, 97 S.Ct. 285. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. 285. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

In *Estelle,* the Supreme Court established the "deliberate indifference" standard. The meaning of that term was further clarified by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), a case that considered its meaning with reference *1255 to a prison's duty to protect its inmates from violence at the hands of other inmates. In *Farmer,* the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970. However, "an Eighth Amendment claimant need

not show that a prison official acted or failed to act believing that a harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S.Ct. 1970. Further, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Accordingly, under *Estelle* and *Farmer,* deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence. Therefore, "summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge, as follows: 'since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness.' " *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir.1999) (quoting *Steele v. Shah,* 87 F.3d 1266, 1269 (11th Cir.1996)). Likewise, in addition to the subjective awareness of the relevant risk, *Estelle* requires that plaintiff show more than mere negligence to establish a violation of the Eighth Amendment and defeat a prison official's motion for summary judgment.

Cases have given substance to *Estelle* 's distinction between "deliberate indifference" and mere negligence, explicating categories of action or inaction that may constitute deliberate indifference. The Eleventh Circuit has repeatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in

serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1425 (11th Cir.1997); *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. *See Harris v. Coweta County,* 21 F.3d 388, 393-94 (11th Cir.1994); [Brown v. Hughes, 894](#) F.2d 1533, 1537-39 (11th Cir.1990). The Eleventh Circuit has also held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment. *See Steele v. Shah,* 87 F.3d 1266, 1269-70 (11th Cir.1996); *Waldrop v. Evans,* 871 F.2d 1030, 1035 (11th Cir.1989). Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel,* 888 F.2d at 789; *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 704 (11th Cir.1985).

     Keeping these legal principals in mind, an examination of the Plaintiff's allegations demonstrates that he has not plead any facts to show that either Campbell or Mosley had any knowledge of the Plaintiff's medical conditions or of facts that would lead them to conclude that the inmate population generally at Easterling CF was at risk because of any deficiency in the provision of health care for the medical needs of the inmates. Campbell and Mosley are thrown into the mix of defendants somewhat along

the lines of the round up in the movie Casablanca of "all the usual suspects." Clearly the Plaintiff failed to prove any facts that would establish that Campbell and Mosley were deliberately indifferent to his medical needs whatsoever.

The Plaintiff alleges that Defendants Smith and Keeton retaliated against him for filing this civil action, yet this claim is disproved by a simple examination of the court's own file. The Plaintiff filed his civil action on 5 December 2005 and then amended his Complaint on 22 December 2005 to allege retaliation. YET, the very first defendant to be served was Warden Mosley who was served on 26 January 2006. Smith and Keeton were not served until 14 February 2006. The Defendant request that this Honorable Court take judicial notice of its own files. It defies logic and reason that a person would take retaliatory action for something of which he is unaware. Both Smith and Keeton state in their affidavits that they had no knowledge of this civil action until they were served. The Plaintiff cannot stand upon his conclusory allegations but must produce facts to the contrary. The Plaintiff and his writ writer simply jumped the gun on their formulaic filing of false allegations against prison officials. Everything in life, especially the filing of a charge of retaliation, is a matter of timing.

Thus, plaintiff's allegation of retaliation fails. Because inmate claims alleging retaliation are subject to abuse, *Flaherty v. Coughlin*, 713 F2d 10, 13 (2nd Cir. 1983), retaliation claims "must be factual and mere conclusory allegations of unconstitutional retaliation will not suffice." *Adams v. James*, 797 F.Supp. 940, 948 (M.D. Fla. 1982)

## **CONCLUSION**

Defendants respectfully submit that there is no genuine issue of fact and that they are entitled to a judgment as a matter of law.

Respectfully submitted on this the 27th day of March, 2006.

        RESPECTFULLY SUBMITTED,

        TROY KING
        ATTORNEY GENERAL


        /s/Jack Wallace, Jr.
        Jack Wallace, Jr. (WAL047)
        ASSISTANT ATTORNEY GENERAL

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 27th day of March, 2006, electronically filed the foregoing with the Clerk of Court using the CM/ECF and served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Herman Paul Johnson, #242189
Easterling Correctional Facility
200 Wallace Drive
Clio, AL  36017

The Clerk of Court using the CM/ECF system will send notification of this filing to the following:

David Berman Block, Esq.
Deanna Sasnette Smith, Esq.
Counsel for Dr. Darbouze

/s/Jack Wallace, Jr.
Jack Wallace, Jr.
ASSISTANT ATTORNEY GENERAL